HARRISON C. VIETS, ADMINISTRATOR v. TOLEDO, ANN ARBOR AND GRAND TRUNK RAILWAY COMPANY.

*Railroad injury—coupling—experts as to speed.*

1. Expert opinions are of no force as against direct testimony for showing the speed of a locomotive, especially if many facts necessary for forming an opinion were not placed before the witness.

2. A youth of ordinary intelligence was killed while coupling freight cars. He was fully aware of the danger of such work, and not entirely inexperienced, and his death was not caused by any negligence or carelessness of those in charge of the train. *Held,* that the railroad company was not answerable for his death.

Error to Monroe. (Joslyn, J.)   Oct. 9.—Oct. 15.

CASE. Plaintiff brings error. Affirmed.

*B. F. Graves* for appellant.

*I. R. Grosvenor* for appellee.

CHAMPLIN, J. The defendant is a corporation formed by a consolidation of the Toledo & Ann Arbor Railroad Company with the Toledo, Ann Arbor & Northeastern Railway Company. Herman G. Viets was killed while in the employ of the Toledo & Ann Arbor Railroad Company as a brakeman, previous to the consolidation. The claim made by the plaintiff, as presented to this Court, is as follows : " That the plaintiff's intestate was a boy 18½ years old, without experience in coupling cars, entirely unacquainted with the danger attending such work, large of his age, clumsy and slow in his perceptive faculties ; and that on or about the 7th of

December, 1878, the Toledo & Ann Arbor Railway Company (which has since been consolidated with another railway, making the defendant), through its conductor, John Carland, hired the plaintiff's intestate, and put him onto one of its freight trains going north through Dundee towards Ann Arbor, and sent him to using the brakes and coupling cars on the freight train, the most hazardous work known to railway employees; that they did this without his parents' knowledge and without instructing him how to perform his duties and to avoid dangers, or in any manner pointing out to him the danger attending the work he was sent to perform, and by reason of this neglect on the part of the company he was killed. It is claimed by the plaintiff that he went upon the train at Carland's request on the morning of the 7th of December, at Dundee crossing, without doing any coupling. The train ran to Azalia, the first station north of Dundee, on defendant's road, where the conductor sent young Viets to make the rear coupling, while himself, the engineer and the other brakeman proceeded to 'kick' back cars for young Viets to couple, and that while doing this work, in some inexplicable manner he got between the cars and was crushed to death."

This is the burden of the first count in the declaration, the second count having been abandoned. The third count charges that the plaintiff's intestate was injured, from which death resulted, by the negligence and incompetency of one Harris McDaniels, the engineer in charge of the engine at the time; and that the company was negligent in keeping him in their employ after it knew, or ought to have known, by the exercise of reasonable diligence, that he was careless and incompetent.

At the conclusion of the testimony the court charged the jury that the plaintiff had failed to prove such negligence as warranted them to render a verdict for the plaintiff, and directed a verdict for defendant; and the only question to be considered here is whether this instruction is correct.

The bill of exceptions embraces the whole testimony given on the trial. From this testimony it appears that the

deceased was between eighteen and nineteen years of age at the time of his death; that he had worked on the railroad in different capacities, such as wiping engines, spiking and doing work in constructing the road, and had, with his father, worked on a gravel train as shoveler. He had also worked for two or three weeks as a fireman on an engine. The plaintiff, who is the father of the deceased, testified that he never applied for a position for him upon the road, but that he made no objection to his firing or working on the gravel train; that he was five feet four inches in height, and weighed about 135 or 140 pounds; that he was good to mind, but slow to learn and understand—slow to comprehend complicated matters; that so far as he knew, he had the use of his arms and legs and body as perfectly and freely as any young man; and that there was no bodily infirmity that he knew of. It appears from the testimony that the deceased had, while employed by the railroad company previous to the hiring as brakeman, performed the duty of braking and coupling cars. The conductor says that he had been on and off with him on the freight train two or three weeks; had ridden up and down the road with him, helped to unload freight, coupled cars on the side track or on the main track whenever he wanted to. He wanted a position as brakeman, and was there practicing; one of the brakemen was away and Viets took his place.

Viets was hired as a brakeman on the morning of the accident, which occurred at a station called Azalia while in the performance of his duty as brakeman in coupling cars. No person saw the accident, and the only evidence of the manner in which it happened is the testimony of Carland, the conductor, who states that "Viets said he put the link in the draw-bar and dropped the pin, and reached down to get it, and as he was straightening up it caught him between the draw-bars." Carland also testifies that when he was told that Viets was hurt he went around the train to where he was and found him lying on his right side, and his face towards the track to the east, and his feet diagonally across, and said to him: "Herman, are you hurt much?" He said: "Oh,

Jack, I am killed!" and he said: "There is no one to blame but myself." The station agent also heard him make the same remark.

There is no evidence in the case tending to prove any carelessness or negligence on the part of the engineer or conductor which caused the accident. It is in evidence that the car which Viets was attempting to couple at the time he was killed was found to be about four feet from the car of the train to which the coupling was to be made, and that the distance was caused by the rebound of the car after it had struck Viets, and evidence was introduced to show that to cause such rebound the engine must have been moving at the rate of ten to fifteen miles an hour. Plaintiff's own testimony, however, was positive and direct upon the point that the speed of the engine at the time of the accident was about two or three miles an hour, and was the speed used in coupling cars. Having shown this fact, the testimony of experts, based upon the rebound of four feet, is entitled to no weight as tending to prove the speed of the engine to be ten to fifteen miles an hour. It is evident that there must be numerous causes besides the speed of the car which might produce such rebound; such as the grade at that point, the weight of the impinging cars, and the strength and elasticity of the springs behind the draw-bars, none of which facts were placed before the experts to enable them to form a correct opinion.

We are satisfied, from the evidence disclosed in this record, that the deceased was a youth of ordinary intelligence, and that he was fully aware of the dangerous business of coupling cars, and not entirely inexperienced, and that his death was not caused by any negligence or carelessness of defendant's employees in charge of the train.

The record discloses no error and the judgment is affirmed.

The other Justices concurred.